C. A. BROADWATER and others *vs.* LION FIRE INSURANCE COMPANY.

## February 2, 1886

Fire Insurance—Construction of Policy—"Buildings Detached."—The following property description in a policy of insurance, to wit, "Buildings adjoining and communicating, occupied, \* \* \* situated detached," *held* to mean, not that the buildings were "detached" from each other, but that, as a whole or mass, they were detached from other buildings.

Same—Powers of Agent.—An agency to procure insurance is not, as a matter of law, presumed to continue for the purpose of *cancelling* an insurance procured, or of receiving notice of such cancellation.

Same—Construction of Policy—Condition as to Fee-Simple Ownership by Insured—Repugnant Provisions.—The policy in this case contained this provision: "This policy shall become void, unless consent in writing is indorsed by the company hereon, in each of the following instances, viz.: \* \* \* If any building intended to be insured stand on ground not owned in fee-simple by the assured." The buildings insured, in this instance, stood upon lands of the United States. The policy purported to insure the buildings (which were plaintiffs' property) by a description as follows, viz.: "Their [plaintiffs'] \* \* \* buildings; \* \* \* occupied as a store, warehouse, officers' and soldiers' club, sleeping-room, and room for opening goods, \* \* \* at Fort Maginnis, Meagher county, M. T.," with other words of the same import as to the uses to which the buildings were put. This description was contained in a printed slip signed by defendant's agents, and attached to the policy as a part of it, and taking the place of what is ordinarily known as the "written part" of a policy. *Held*, that the description was sufficient to inform the defendant, and its agents by whom the slip was signed and the policy issued, that the buildings insured were situated at a United States military post or fort; that they were used and occupied by a post-trader at that place, and that, therefore, the plaintiff could not, in the business of a post-trader, in any ordinary course of things, own the land on which they were situated, but that the same was the property of the United States. *Held, also*, that the provision as to making the policy void in case the ground is not owned by the insured may properly be treated as repugnant to the real contract of the parties, and of no effect, or as *controlled* by the description in the slip.

v.34M—30

Plaintiffs brought this action in the district court for Ramsey county upon a policy of fire insurance. The action was tried by *Simons, J.*, without a jury, and judgment directed for plaintiffs. Defendant appeals from an order refusing a new trial.

The insurance was for $3,000, of which $960 was "on their (plaintiffs') one-story, frame, shingle-roofed buildings, adjoining and communicating, occupied as a store, warehouse, officers' and soldiers' club, sleeping-rooms, and room for opening goods, situated detached, at Fort Maginnis, Meagher county, M. T." The insurance involved in this action, together with other insurance, was procured for plaintiffs by one M. D. Miller. Evidence was introduced to show that the defendant had, prior to any loss under the policy in suit, notified Miller that the policy was cancelled.

*C. D. O'Brien*, for appellant.

*Harvey Officer*, for respondents.

BERRY, J. This is an action upon a fire policy, in which the defendant interposes the three following defences : (1) That the policy was obtained by fraud; (2) that the title to the insured property was not in the insured, and so the policy was void by its own terms; (3) that the premium was never paid, and that the policy was cancelled before loss.

We have carefully perused all the testimony in the case, oral and documentary, and, after duly considering the briefs and argument of defendant's counsel, are of opinion that the findings of the trial court against the first and third defences are sufficiently sustained by the evidence. Without here attempting the unnecessary task of considering the evidence in detail, we shall only add two suggestions:. (1) That the fair construction of the property description found in the policy, to wit, "buildings adjoining and communicating, occupied, * * * situated detached, * * *" is not that the buildings were *"detached"* from each other, but that *as a whole or mass* they were *"detached"* from other buildings. (2) An agency to procure insurance is not, as a matter of law, presumed to continue for the purpose of *cancelling* an insurance *procured*, or of receiving notice of such cancellation. *Grace* v. *American Cent. Ins. Co.*, 109 U. S. 278; *Adams* v. *Manufacturers', etc., Ins. Co.*, 17 Fed. Rep. 630. And in this

case there is no ground for an inference of fact that Miller was plaintiffs' agent for the purpose of cancelling the policy in suit, or of receiving notice of such cancellation.

This brings us to consider the second defence. The policy contains the following provision : "This policy shall become void, unless consent in writing is indorsed by the company hereon, in each of the following instances, viz. :   *   *   *   If any building intended to be insured stand on ground not owned in fee-simple by the assured." The buildings insured in this instance in fact stood upon land of the United States. The finding of the trial court is "that at the time of the application for said insurance, and ever since until the loss,   *   *   *   the   *   *   *   buildings and property in said policy described were situated upon land which was not owned by the plaintiffs, but was owned by the government of the United States; that the said buildings were then and there occupied and used by said C. J. McNamara, (one of plaintiffs' firm,) who was then and there, and ever since has been, the post-trader at the said Fort Maginnis mentioned in said policy, and that all of said facts relative to the ownership of said land, and the use and occupation of said buildings, were well known to and understood by said defendant prior to and at the date of said policy, and the issuance and delivery thereof to the plaintiffs." There appears to have been no formal written application for the insurance in controversy, but what is ordinarily spoken of as the *written* part of a policy, containing the description of the insured property, was in this instance upon a printed slip, *signed by defendant's agents*, and attached to the policy so as to form a part of it. This slip, so far as here important, is as follows: "The Lion Fire Insurance Company,   *   *   *   in consideration of sixty dollars,   *   *   *   does insure Messrs. Broadwater, McNamara & Co. to the amount of $3,000;   *   *   *   $960 on their one-story, frame, shingle-roofed buildings adjoining and communicating,   *   *   *   occupied as a store, warehouse, officers' and soldiers' club, sleeping-rooms, and room for opening goods,   *   *   *   at Fort Maginnis, Meagher county, M. T.; and $120 on store and office furniture and fixtures   *   *   *   while contained in that part of said building occupied as a store and offices; and $60 on billiard

tables *  *  * in that part of said building occupied as officers' club-room; *  *  * and $1,320 on general merchandise *  *  * contained in said building, *  *  * exclusive of that part *  *  * occupied as warehouse and soldiers' club; and $480 on general merchandise *  *  * while contained in that part of said building occupied as a warehouse and soldiers' club." In our judgment, this description of the property insured was enough to inform the defendant, and its agents *by whom the slip was signed* and the policy issued, that the buildings insured (which were admittedly plaintiffs' property) were situated at a United States military post or fort, and that they were used and occupied by a post-trader, in the business of a post-trader at that place.

If the description did not so *in fact* inform the defendant's agents, it was not the fault of plaintiffs. It was amply sufficient notice of the facts. "At Fort Maginnis" does not mean in the neighborhood of, but upon the site of the fort, or upon the grounds or reservation connected with and forming part of the military post at that place, and within the jurisdiction of the military authorities there stationed. Then, to go one step further, the facts that there is no private ownership of land at such posts, (especially when situated in remote parts of the country,) and no private trading allowed there, and the facts as to the position of a post-trader are, to such an extent, of a public character, and so generally known,— or if not in fact *known* in a particular instance, so readily suggested by a moment's reflection,— that the plaintiffs had the right to assume that the description on the printed slip would sufficiently inform the defendant and its agents that the plaintiffs did not and could not, in any ordinary course of things, own the land on which the buildings insured were situated. In view of these considerations, we are of opinion that the finding of the court above recited, as to the defendant's knowledge of the fact that plaintiffs did not own the land on which the buildings stood, is supported by the evidence.

It follows that the description contained in the slip is in effect the same as if it had been expressly stated therein that the ground upon which the insured buildings were situated was not the property of plaintiffs, but of the United States; and if this is so, the defendant

having insured the building upon the basis that they stood on ground not owned by plaintiffs, the subsequent provision heretofore quoted, —viz., that if the title to the ground was not in plaintiffs, the policy should become void unless consent in writing was indorsed on the policy by the company,—may be treated either as repugnant to the contract *in fact* made, and of no effect, or as controlled by the description in the slip. For all purposes of construction the printed slip is to be regarded as what is ordinarily known as the *written part* of the policy, which, as more immediately expressive of the intention of the parties, is by a familiar rule allowed a controlling force in case of repugnancy between it and stipulations which, as applicable to policies in general, are found in what may be termed the printed blank or form. *Phœnix Ins. Co.* v. *Taylor*, 5 Minn. 393, (492;) Wood on Fire Ins. §§ 63–67, and cases cited; *Harper* v. *Albany M. Ins. Co.*, 17 N. Y. 194.

If there were any doubt as to the correctness of this our conclusion, we should be much inclined to hold that the evidence of waiver on defendant's part of the want of title in plaintiffs is so strong, resting, as it appears to do, upon admissions in defendant's answer, and in documents whose authenticity and authority are unquestioned, as to warrant us in denying a new trial, which would in all probability lead to the same result as that which has already taken place.

Order affirmed.